# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Greensboro Division

| | |
|---|---|
| MARY DOE, by and through her mother and next friend, JANE DOE; BETH ROE, by and through her mother and next friend, ALICE ROE; DIANE POE, by and through her mother and next friend, CAROL POE, <br><br> *Plaintiffs*, <br><br> v. <br><br> CABARRUS COUNTY BOARD OF EDUCATION; and DR. JOHN KOPICKI, in his official capacity as Superintendent of Cabarrus County Schools, <br><br> *Defendants*. | Case No. 1:26-cv-00752-TDS-JGM |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

LEGAL STANDARD ...................................................................................................7

ARGUMENT ................................................................................................................8

    I.      Plaintiffs are likely to prevail on the merits. .........................................8

        A.     Plaintiffs have standing. .........................................................................8

        B.     Plaintiffs are likely to succeed on their Title IX claim. ....................10

        C.     Plaintiffs are likely to succeed on their equal-protection claims. ...15

    II.     The remaining factors favor a preliminary injunction. .......................21

    III.    The Court should waive the Rule 65(c) security bond. ........................22

CONCLUSION ...........................................................................................................23

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*,
172 F.4th 361 (4th Cir. 2026) ...................................................................................9

*Beard v. Whitmore Lake Sch. Dist.*,
402 F.3d 598 (6th Cir. 2005) ....................................................................................19

*CACI, Inc.-Fed. v. U.S. Navy*,
674 F. Supp. 3d 257 (E.D. Va. 2023) .........................................................................22

*Carcano v. McCrory*,
203 F. Supp. 3d 615 (M.D.N.C. 2016) ............................................... 13, 14, 19

*Centro Tepeyac v. Montgomery County*,
722 F.3d 184 (4th Cir. 2013) ....................................................................................7

*Deal v. Mercer Cnty. Bd. of Educ.*,
911 F.3d 183 (4th Cir. 2018) ....................................................................................10

*Faulkner v. Jones*,
10 F.3d 226 (4th Cir. 1993) ......................................................................................19

*Fleming v. Strong*,
749 F. Supp. 3d 1201 (N.D. Fla. 2024) .....................................................................8

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ..................................................................................................10

*G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*,
822 F.3d 709 (4th Cir. 2016) ....................................................................................13

*Giovani Carandola, Ltd. v. Bason*,
303 F.3d 507 (4th Cir. 2002) ....................................................................................21

*Gloucester Cnty. Sch. Bd. v. GG. Ex rel. Grimm*,
580 U.S. 1168 (2017) ................................................................................................14

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020), .......................................................... 4, 14, 20

*Int'l Refugee Assistance Proj. v. Trump*,
857 F.3d 554 (4th Cir. 2017) ....................................................................................22

*Jones v. Bd. of Governors of Univ. of N.C.*,
704 F.2d 713 (4th Cir. 1983) ....................................................................................8

*Leaders of a Beautiful Struggle v. Balt. Police Dep't,*
2 F.4th 330 (4th Cir. 2021) .................................................................... 21, 22

*Lowy v. Daniel Def., LLC,*
167 F.4th 175 (4th Cir. 2026) ..................................................................9

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) .................................................................................8

*NAACP-Greensboro Branch v. Guilford Cnty. Bd. of Elections,*
858 F. Supp. 2d 516 (M.D.N.C. 2012) ...................................................15

*Pashby v. Delia,*
709 F. 3d 307 (4th Cir. 2013) .................................................................22

*Peltier v. Charter Day Sch., Inc.,*
37 F.4th 104 (4th Cir. 2022) ...................................................................18

*Salomon & Ludwin, LLC v. Winters,*
150 F.4th 268 (4th Cir. 2025) ...................................................................7

*Sheppard v. Visitors of Va. State Univ.,*
993 F.3d 230 (4th Cir. 2021) ............................................................ 11, 15

*State v. Cofield,*
357 S.E.2d 622 (N.C. 1987) ....................................................................15

*United States v. Garcia,*
855 F.3d 615 (4th Cir. 2017) ...................................................................11

*United States v. Virginia,*
518 U.S. 515 (1996) ................................................................................20

*W. Virginia v. B.P.J. by Jackson,*
146 S. Ct. 2356 (2026) ............................... 2, 4, 10, 11, 14, 16, 18, 20

*Wilkins v. Eng. Constr. Co.,*
823 F. Supp. 3d 614 (W.D. Va. 2026) ......................................................9

*Winter v. Nat. Res. Def. Council, Inc.,*
555 U.S. 7 (2008) .....................................................................................7

*Wright v. North Carolina,*
787 F.3d 256 (4th Cir. 2015) ...................................................................15

*York v. Story,*
324 F.2d 450 (9th Cir. 1963) ...................................................................19

## Statutes

20 U.S.C. §1681.................................................................................. 2, 10

## Federal Rules and Regulations

34 C.F.R. §106.33............................................................................ 2, 4, 11

40 Fed. Reg. 24128 ...............................................................................2

Fed. R. Evid. 201 ...............................................................................11

## Constitutional Provisions

U.S. Const. amend. XIV, §1 ...............................................................15

N.C. Const. art. I, §19 ......................................................................15

## Other Authorities

Cabarrus Cnty. Bd. of Educ., *Financial Statements for the Fiscal Year Ended June 30, 2025* (2025), https://perma.cc/9LUB-TF52......................................11

iv

# INTRODUCTION

Plaintiffs Mary Doe, Beth Roe, and Diane Poe are three minor female students at Cox Mill High School in Cabarrus County, North Carolina, who bring this action through their mothers as next friends.[1] They seek a preliminary injunction prohibiting the Cabarrus County School Board and Dr. John Kopicki ("Defendants") from enforcing a policy and practice that permits biological males to access and use female-designated restrooms, locker rooms, and changing areas.

Throughout the 2024–2025 and 2025–2026 school years, Plaintiffs repeatedly encountered biological males in their school restrooms, locker rooms, and changing areas. These encounters caused them distress, discomfort, and a loss of privacy and dignity. They also placed them in situations that conflicted with their sincerely held religious convictions regarding privacy, modesty, and bodily dignity. When Plaintiffs and their parents raised their concerns to school administrators, Defendants refused to take corrective action, instead placing the burden on Plaintiffs to find alternative facilities while continuing to permit biological males to use intimate spaces designated specifically for females.

---

[1] Because of the substantial risk that they would face harassment, intimidation, and physical harm if their identities were revealed, Plaintiffs have filed a motion to proceed using pseudonyms. *See* Dkts.4-6.

Defendants' policy is unlawful sex discrimination. Under Title IX of the Education Amendments of 1972, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a). In 1975, the then-Department of Health, Education, and Welfare issued regulations to implement Title IX. 40 Fed. Reg. 24128. Of relevance here, one of these regulations provides that schools "may provide separate toilet, locker room, and shower facilities on the basis of sex," as long as "such facilities provided for students of one sex [are] comparable to such facilities provided for students of the other sex." 34 C.F.R. §106.33.

The Supreme Court has recently confirmed that "[t]he term 'sex' in the 1972 Title IX statute … and the 1975 Title IX regulations cannot plausibly be interpreted to refer to anything other than biological sex." *W. Virginia v. B.P.J. by Jackson*, 146 S. Ct. 2356, 2371 (2026). The Court likewise confirmed that separating school activities based on biological sex can serve important governmental interests, including protecting the dignity and safety of women and girls. *See id*. at 2375.

Defendants' policy denies Plaintiffs equal educational opportunities because they are female, in violation of Title IX and the Equal Protection

Clauses of the Fourteenth Amendment and the North Carolina Constitution. With the school year set to begin on August 12, 2026, the policy will also cause irreparable harm to Plaintiffs without intervention from this Court. The Court should enjoin Defendants from enforcing their policy, and require them to ensure that only biological female students use female-designated facilities at Cox Mill High School during the pendency of this litigation.

## BACKGROUND

Cabarrus County Schools operates Cox Mill High School in Concord, North Carolina. Defendant Cabarrus County Board of Education is a governmental entity authorized by the State of North Carolina to administer Cabarrus County Schools and is a recipient of federal financial assistance subject to Title IX. Defendant Dr. John Kopicki is the Superintendent of Cabarrus County Schools, responsible for adopting and implementing the district's policies and practices.

Plaintiffs—Mary Doe, Beth Roe, and Diane Poe—are seventeen-year-old female students currently enrolled at Cox Mill High School. Their mothers— Jane Doe, Alice Roe, and Carol Poe—are residents of Cabarrus County, North Carolina, and bring this action as next friends of their daughters. Plaintiffs are practicing Christians who strive to live in accordance with their Christian faith. *See* Doe Decl. ¶5; Roe Decl. ¶5; Poe Decl. ¶5. Their Christian faith

3

informs their understanding of modesty, privacy, and bodily dignity, and they believe that maintaining privacy from biological males in intimate settings is an important part of living out those beliefs. *See* Doe Decl. ¶6; Roe Decl. ¶6; Poe Decl. ¶6.

Cabarrus County Schools offers toilets, locker rooms, and changing facilities on the basis of sex, as permitted by Title IX and 34 C.F.R. §106.33. However, Cabarrus County Schools now permits biological males to access and use restrooms, locker rooms, and changing areas designated exclusively for females. School officials justify this district-wide practice by ignoring a student's biological sex and instead considering the self-proclaimed "gender identity" of the student when determining which facilities that student is permitted to use. At an April 13, 2026 meeting of the Cabarrus County Board of Education, the School Board's attorney stated that the Board engages in this practice because it considers itself bound by the Fourth Circuit's decision in *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020), which held that requiring a transgender student to use the bathroom consistent with biological sex violates Title IX. *See* Am. Compl. ¶80. The Supreme Court has since rejected *Grimm*'s legal premise. *See B.P.J.*, 146 S. Ct. at 2371.

Permitting biological males to access intimate female spaces has had, and continues to have, real, direct, and lasting harms on Plaintiffs. In October

4

2025, Mary Doe first learned that a biological male was accessing female-designated facilities at Cox Mill High School. Doe Decl. ¶7. The fact that a male was accessing female spaces, such as restrooms, distressed Mary Doe. *See id.* On November 19, 2025, her mother Jane Doe emailed Defendant Kopicki to report her daughter's distress, but neither Kopicki nor any other school official responded. *See id.* ¶¶8-9. On December 1, 2025, Mary Doe encountered a biological male in the female restroom. *See id.* ¶10. This encounter made Mary Doe uncomfortable and anxious. *See id.* Mary Doe raised her concerns with the Athletic Director and then-Principal Christopher Myers. *See id.* ¶¶11-14. Rather than address the male student's use of female facilities, the principal offered Mary Doe a staff restroom key. Mary Doe encountered a biological male in the restroom on at least two additional occasions before the end of the school year. *See id.* ¶17. Each encounter caused Mary Doe distress. *See id.* As a result, Mary Doe stopped using school restrooms whenever possible, causing her physical discomfort and posing a risk to her health and well-being. *See id.* ¶¶18-19.

Beth Roe first encountered a biological male in the girls' team changing area on April 23, 2025. *See* Roe Decl. ¶8. Because the male's presence caused her discomfort, she left and changed in a restroom instead. *See id.* ¶9. The next day, she emailed the principal, assistant principal, athletic director, and her

5

coach to express her concerns. *See id.* ¶10. Then-Principal Myers called her into his office and told her that, although he was sympathetic, there was nothing he could do because the policy was required by law. *See id.* ¶11. Since that time, Beth Roe has continued to change in a single stall restroom rather than the designated team changing area to avoid biological males. *See id.* ¶12. Beth Roe intends to participate on the sports team during the upcoming 2026–2027 school year. *See id.* ¶15.

Throughout the 2024–2025 school year, Diane Poe participated in an all-female sports team and planned to continue with that same team in the 2025-2026 school year. *See* Poe Decl. ¶7. In the summer of 2025, Diane Poe attended a workout session for the team, which was a precursor to the team's tryouts. *See id.* ¶8. A biological male was permitted to attend and participate in the workout session, causing Diane significant discomfort because Diane does not want to share intimate facilities with biological males. *See id.* ¶¶9-11. Because of the biological male's participation on the team and the likelihood of sharing intimate spaces with him, Diane decided not to try out for the team for the 2025-2026 school year. *See id.* ¶12. Diane Poe enrolled in a physical education course in the 2025–2026 school year and again encountered a biological male in the female locker room on a near daily basis. *See id.* ¶¶14-15. She chose not to change clothes at school to avoid undressing in the presence of a biological

6

male. *See id.* ¶16. Again, these encounters caused Diane Poe extreme discomfort. *See id.* ¶17. As a result of Defendants' policy, Diane Poe does not believe that she can continue participating in sports at school. *See id.* ¶21.

Despite repeated complaints from students and parents—including at Cabarrus County Board of Education meetings—Defendants have consistently maintained their policy throughout the 2024–2025 and 2025–2026 school years. Minor Plaintiffs remain enrolled at Cox Mill High School, the policy remains in effect, and they reasonably expect to encounter biological males in female-designated facilities during the upcoming 2026–2027 absent immediate judicial relief.

## LEGAL STANDARD

Plaintiffs are entitled to a preliminary injunction if they can show that (1) they are "'likely to succeed on the merits,'" (2) they are "'likely to suffer irreparable harm in the absence of preliminary relief,'" (3) "'the balance of equities tips in [their] favor,'" and (4) "'an injunction is in the public interest.'" *Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 188 (4th Cir. 2013) (en banc) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). When multiple claims are advanced, "finding a likelihood of success on only one claim is sufficient to justify injunctive relief." *Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 273 n.1 (4th Cir. 2025). "If the balance of hardships

tips decidedly in the plaintiff's favor, an injunction preserving the status quo should issue 'if, at least, grave or serious questions are presented.'" *Jones v. Bd. of Governors of Univ. of N.C.*, 704 F.2d 713, 715-16 (4th Cir. 1983).

ARGUMENT

## I. Plaintiffs are likely to prevail on the merits.

### A. Plaintiffs have standing.

Plaintiffs have standing to seek injunctive relief. A plaintiff has standing when she has suffered an injury in fact that is fairly traceable to the defendant's conduct and is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, Plaintiffs are female students at Cox Mill High School who have repeatedly encountered biological males in their restrooms, locker rooms, and changing areas. *See* Doe Decl. ¶¶10, 17; Roe Decl. ¶8; Poe Decl. ¶¶15, 17. These encounters have caused them distress, discomfort, and a loss of privacy and dignity. *See* Doe Decl. ¶¶17, 19, 28; Roe Decl. ¶19; Poe Decl. ¶¶12, 17, 20. Plaintiffs have been forced to avoid school restrooms, change in alternative locations away from their teammates, and in one case forgo participation in school athletics altogether. *See* Doe Decl. ¶¶18-19; Roe Decl. ¶14; Poe Decl. ¶¶12, 16, 20. Plaintiffs' loss of privacy is an injury in fact that confers standing. *See Fleming v. Strong*, 749 F. Supp. 3d 1201, 1202 (N.D. Fla. 2024) (finding plaintiff suffered injury in fact where

8

plaintiff may have been "required to involuntarily expose her nude body to natal male inmates housed in her facility"); *see also Wilkins v. Eng. Constr. Co.*, 823 F. Supp. 3d 614, 621 (W.D. Va. 2026) (finding that a "loss of … privacy" was an "injury in fact"). Plaintiffs' harm is also "a close analogue to the common law tort of intrusion upon seclusion." *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361, 368 (4th Cir. 2026) (cleaned up). "Intrusion upon seclusion is an intentional intrusion, physical or otherwise, upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person." *Id.* at 369 (cleaned up). Here, Plaintiffs face a continuing, unwanted presence of biological males in spaces designated for females. This highly offensive intrusion on Plaintiffs' "private concerns" independently suffices to show an injury in fact. *Id.*

The other elements of standing are satisfied, too. Plaintiffs' injuries are directly traceable to Defendants' policy of permitting students to access intimate facilities based on gender identity rather than biological sex. Defendants were "keenly aware" that students of the male sex were accessing female-designated spaces as a result of their policy, making Defendants responsible for injuries caused by third parties who accessed female-designated spaces. *Lowy v. Daniel Def., LLC*, 167 F.4th 175, 200 (4th Cir. 2026) (quotation marks omitted). And a court order enjoining this policy would

9

redress Plaintiffs' injuries by mandating sex-separated facilities. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ("If a defendant's action causes an injury, enjoining the action … will typically redress that injury.").

Critically, Plaintiffs face a certain, impending threat of future injury: they are currently enrolled at Cox Mill High School, the policy remains in effect, and they reasonably expect to encounter biological males in female-designated facilities during the upcoming school year absent immediate judicial relief. Plaintiffs thus have "a sufficiently imminent injury in fact" to have standing to seek prospective injunctive relief. *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018) (quotation marks omitted).

**B.     Plaintiffs are likely to succeed on their Title IX claim.**

Title IX provides that "[n]o person … shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a). The Supreme Court recently made clear that "[t]he term 'sex' in the 1972 Title IX statute … cannot plausibly be interpreted to refer to anything other than biological sex." *B.P.J.*, 146 S. Ct. at 2371.

To prevail on a Title IX claim, a plaintiff must establish that: (1) the defendant operates an education program or activity receiving federal financial assistance; (2) the plaintiff was excluded from participation in, denied the benefits of, or otherwise subjected to discrimination under that program or activity; and (3) the discrimination occurred on the basis of sex—that is, sex was the but-for cause of the challenged treatment. *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 236-37 (4th Cir. 2021). The first element is undisputed. By their own admission, Defendants receive federal financial assistance and operate a public school system subject to Title IX. *See* Cabarrus Cnty. Bd. of Educ., *Financial Statements for the Fiscal Year Ended June 30, 2025*, at 76-78 (2025), https://perma.cc/9LUB-TF52.[2]

Plaintiffs are likely to establish the remaining elements. Title IX plainly permits schools to provide separate restrooms, locker rooms, and changing facilities for males and females based on biological sex. 34 C.F.R. §106.33; *B.P.J.*, 146 S. Ct. at 2373. Separating intimate facilities based on sex is not discrimination prohibited by Title IX because it treats similarly situated individuals equally by distinguishing the sexes based on relevant biological

---

[2] The Court may take judicial notice of this admission. *See* Fed. R. Evid. 201(b); *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites.").

differences. Those sex-separated facilities are themselves a benefit of the educational program because they provide students with privacy while using the restroom, changing clothes, and performing other inherently private bodily functions.

Defendants' policy deprives female students of that benefit, thus satisfying the second element. Under Defendants' policy, if a female student utilizing the supposedly sex-segregated student facilities suddenly finds herself sharing a restroom or undressing with a biological male whom the school has permitted to enter the female facility, the burden falls on the female student—not the biological male—to leave the female student facility and use a separate facility designed for use by adult staff members. As a result, Plaintiffs—biological females who identify as female—must make a choice: either abandon their interest in privacy and modesty so that they can remain with their female classmates in the common female facilities, or leave those common facilities to use a not-comparable facility separate from their female classmates. The biological male student, meanwhile, is faced with no such choice. Worse yet, that biological male student has the option of using either the common male facilities or the common female facilities. The biological male student is never faced with the dilemma forced upon the biological female student. By permitting biological males to use female-designated restrooms,

12

locker rooms, and changing areas, Defendants have excluded Plaintiffs from participation in, denied them the benefits of, and subjected them to discrimination under Defendants' education programs and activities.

The third element is also satisfied: Defendants' discriminatory treatment of Plaintiffs occurs on the basis of sex. Defendants chose to preserve access for biological males who seek to avoid sharing spaces with other biological males by using female-designated facilities. Meanwhile, they deny biological females the ability to use those same facilities free from the presence of biological males. By prioritizing a biological male students' access to female facilities over Plaintiffs' equal access to sex-separated intimate spaces, Defendants discriminate against Plaintiffs on the basis of sex in violation of Title IX.

This Court previously issued an injunction prohibiting the enforcement of a North Carolina law that required "local boards of public education" to ensure that multiple-occupancy facilities are "designated for and only used by persons based on their biological sex." *Carcano v. McCrory*, 203 F. Supp. 3d 615, 627 (M.D.N.C. 2016) (Schroeder, J.) (quotation marks omitted). In reaching that decision, the Court relied on the Fourth Circuit's then-controlling decision in *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709 (4th Cir. 2016) (*Grimm I)*, as well as a Department of Education opinion

13

letter interpreting Title IX and its regulations. *See Carcano*, 203 F. Supp. 3d at 632-39. After the Department of Education rescinded the opinion letter, the Supreme Court vacated *Grimm I* and remanded the case. *See Gloucester Cnty. Sch. Bd. v. GG. Ex rel. Grimm*, 580 U.S. 1168 (2017). The legal landscape therefore has materially changed since *Carcano* was decided.

In 2020, the Fourth Circuit again held that excluding a transgender-identifying student from bathroom facilities designated for the opposite sex violated Title IX, reasoning that "sex" as used in Title IX and its 1975 regulations was not limited to biological sex but also included gender identity. *Grimm v. Gloucester County School Board*, 972 F.3d 586, 593-94, 618-19 (4th Cir. 2020) (*Grimm II*). But the Supreme Court has since rejected that interpretation of Title IX, holding that "[t]he term 'sex' in the 1972 Title IX statute, the 1974 Javits Amendment, and the 1975 Title IX regulations cannot plausibly be interpreted to refer to anything other than biological sex." *B.P.J.*, 146 S. Ct. at 2371; *see also id.* ("The ordinary meaning of the term 'sex' at the time of enactment in the early 1970s was biological sex and not gender identity[.]"). Thus, the interpretation of Title IX that informed *Grimm I*, *Grimm II*, and *Carcano* is no longer the governing one: Title IX protects against discrimination on the basis of *biological sex*, not *gender identity*.

14

Because Plaintiffs are likely to succeed on their claim that Defendants' policy discriminates on the basis of sex in violation of Title IX, Plaintiffs are entitled to injunctive relief.

**C.     Plaintiffs are likely to succeed on their equal-protection claims.**

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. To prevail on a claim under the Equal Protection Clause against a state actor, a plaintiff must show that she was treated differently from similarly situated individuals, and that the disparate treatment resulted from intentional discrimination on the basis of sex.[3] *Sheppard*, 993 F.3d at 238. Policies or "laws that classify by sex are subject to what is known as intermediate scrutiny: Sex-based classifications

---

[3] This Court, the Supreme Court of North Carolina, and the Fourth Circuit have held that Article I, Section 19's Equal Protection Clause is coextensive with the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. *NAACP-Greensboro Branch v. Guilford Cnty. Bd. of Elections*, 858 F. Supp. 2d 516, 522 n. 9 (M.D.N.C. 2012) ("[A] violation of the federal Equal Protection Clause also constitutes a violation of the Equal Protection Clause of Article I, § 19 of the North Carolina Constitution."); *State v. Cofield*, 357 S.E.2d 622, 628-29 (N.C. 1987); *Wright v. North Carolina*, 787 F.3d 256, 269 (4th Cir. 2015). Because Plaintiffs have a likelihood of success on the merits of their federal equal protection claim, they likewise have a likelihood of success on their state equal protection claim.

are permissible only when the classification is 'substantially related' to achieving an 'important' government objective." *B.P.J.*, 146 S. Ct. at 2374.

Defendants have adopted and implemented a policy and practice of permitting students to access and use the restroom, locker room, and changing room facilities that correspond to their gender identity rather than their biological sex. Plaintiffs are biological females, identify as females, and have never identified as males. Plaintiffs are therefore permitted only to access and use the female-designated restrooms, locker rooms, and changing room facilities. On multiple occasions, Plaintiffs encountered biological males in the female-designated restrooms, locker rooms, and changing room facilities. These encounters caused Plaintiffs to feel uncomfortable, distressed, and vulnerable because their privacy and dignity were compromised.

In response to Plaintiffs' concerns, Defendants did not restore Plaintiffs' access to female-only facilities. Instead, Defendants offered some Plaintiffs access to adult staff restrooms, while other Plaintiffs, left without an adequate alternative, changed in restrooms located farther away from their class and sports team activities, or avoided using the locker room. *See* Doe Decl. ¶¶14, 18; Roe Decl. ¶¶12-14; Poe Decl. ¶16. The staff restrooms are inconveniently located and require Plaintiffs to separate themselves from their peers, exposing them to stigmatization and ostracization. *See* Doe Decl. ¶15; Roe

16

Decl. ¶13. And the alternative changing areas remain accessible to biological males under Defendants' policies. *See* Roe Decl. ¶12. Defendants' policies and practices subject Plaintiffs to intentional discrimination on the basis of sex by placing the asserted interest of biological male students in using female-designated spaces above Plaintiffs' interest in bodily privacy when using those spaces. Under the policy, when a female student is uncomfortable sharing an intimate space, such as a restroom, with a biological male, she—not the biological male—bears the burden of leaving the common female restroom to use a separate facility designated for use by adult staff. The practical effect of the policy is that the female student is denied access to female-only facilities, while a similarly situated biological male retains full access to the female-only facilities, as well as the facilities reserved for his biological sex. In other words, the policy conditions a female student's equal use and enjoyment of school facilities on her willingness to give up the very privacy interests that female-only spaces exist to protect. That result is sex discrimination.

Defendants' policy requires Plaintiffs—not the biologically male students who sought access to the girls' restroom—to alter their behavior by using a separate, less convenient facility because of their sex-based privacy objections. When a conflict arose between one student's asserted interest in using the girls' restroom and another student's interest in bodily privacy in a

17

sex-segregated restroom, the school accommodated the former and undermined the privacy interest of the latter.

Defendants treat Plaintiffs worse than biological males who seek to use the female-designated facilities, and their actions are not substantially related to any important government interest. *See B.P.J.*, 146 S. Ct. at 2374. To the extent Defendants' policy operates asymmetrically in practice, it additionally constitutes a discriminatory sex classification. The policy applies only to female-designated facilities, as no biological female students currently use the restrooms and intimate facilities designed for male students. Thus, the entire burden of the policy falls on female students, who must either accept the presence of biological males in their intimate spaces, or use a separate restroom. Male students, by contrast, may continue to use male-designated intimate facilities with only members of their sex, and do not have to use a separate restroom to protect their bodily privacy. Policies that impose requirements on female students that are not imposed on male students are constitutionally suspect. *See Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 126 (4th Cir. 2022) (en banc) (holding that school requirement that female students must wear skirts violated the Equal Protection Clause).

This Court has already recognized "that the protection of bodily privacy is an important government interest and that the State may promote this

18

interest by excluding members of the opposite sex from places in which individuals are likely to engage in intimate bodily functions." *Carcano*, 203 F. Supp. 3d at 641 (collecting cases). That principle reflects a longstanding recognition that individuals have a substantial privacy interest in their unclothed bodies and that, particularly in intimate settings, privacy concerns justify separating the sexes. *See id.* (citing *Faulkner v. Jones*, 10 F.3d 226, 232 (4th Cir. 1993) ("The point is illustrated by society's undisputed approval of separate public rest rooms for men and women based on privacy concerns. The need for privacy justifies separation and the differences between the genders demand a facility for each gender that is different."); *York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963) ("The desire to shield one's unclothed figure from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity."); *Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 604 (6th Cir. 2005) ("Students of course have a significant privacy interest in their unclothed bodies.")). These authorities establish not merely a generalized preference for privacy, but a specific and well-established privacy interest in avoiding exposure of one's unclothed body to members of the opposite sex. *Carcano* thus recognized that sex-segregated facilities serve a legitimate function by preserving the privacy, dignity, and personal security of individuals who must use facilities for intimate bodily functions.

19

In *Grimm II*, the Fourth Circuit held that excluding a transgender-identifying student from bathroom facilities designated for the opposite sex violated the Equal Protection Clause because the use of biological sex as a classification was an improper sex stereotype. 972 F.3d at 593, 608. The Supreme Court has since rejected the legal premise underlying *Grimm*, holding that separation based on biological sex passes intermediate scrutiny where related to an important government interest. *B.P.J.*, 146 S. Ct. at 2372. Accordingly, *Grimm* can no longer be regarded as controlling on that issue.

Because Plaintiffs allege intentional sex-based discrimination, the policy is subject to intermediate scrutiny. *United States v. Virginia*, 518 U.S. 515, 533 (1996). Under that standard, Defendants bear the burden of demonstrating an "exceedingly persuasive justification" for the sex-based classification by showing that it serves important governmental objectives and that the discriminatory means employed are substantially related to achieving those objectives. *Id.* at 534. Whatever interest Defendants may assert in accommodating students who identify with a gender different from their biological sex, the Constitution does not require depriving other students of the privacy interests protected by sex-separated restrooms, locker rooms, and changing areas. Less restrictive alternatives—including the options of single-occupancy restrooms and private changing areas for students experiencing

20

gender dysphoria—allow schools to accommodate such students without requiring female students alone to bear the costs of that accommodation. Because Defendants cannot demonstrate an exceedingly persuasive justification for intentionally denying female students the same sex-separated privacy afforded to male students, Plaintiffs are likely to succeed on their Equal Protection Clause claims.

## II.  The remaining factors favor a preliminary injunction.

The remaining factors also favor a preliminary injunction. Plaintiffs are suffering irreparable harm because their constitutional rights are being violated. "Because there is a likely constitutional violation, the irreparable harm factor is satisfied." *See Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (en banc).

The balance of the equities and public interest also favors preliminary relief. First, Defendants are "in no way harmed by issuance of a preliminary injunction which prevents [them] from enforcing restrictions likely to be found unconstitutional." *Id*. Plaintiffs, meanwhile, would continue to be excluded from facilities designated for use by female students absent injunctive relief. Second, "it is well established that the public interest favors protecting constitutional rights." *Id*. Indeed, upholding the Constitution always promotes the public interest. *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th

21

Cir. 2002). When courts "protect the constitutional rights of the few, it inures to the benefit of all." *Int'l Refugee Assistance Proj. v. Trump*, 857 F.3d 554, 604 (4th Cir. 2017) (en banc), *vacated as moot*, 583 U.S. 912 (2017).

In sum, Plaintiffs are likely to prevail on their statutory and constitutional claims, which means they necessarily prevail on the remaining factors. Where "there is a likely constitutional violation, the irreparable harm factor is satisfied," the government "'is in no way harmed'" by a preliminary injunction that simply prevents it from violating the Constitution, and "it is well-established that the public interest favors protecting constitutional rights." *Leaders of Beautiful Struggle*, 2 F.4th at 346.

### III.   The Court should waive the Rule 65(c) security bond.

Rule 65(c) permits a court to levy a bond upon the grant of a preliminary injunction, but the court "'retains the discretion to set the Rule 65(c) bond amount as it sees fit or waive the security requirement.'" *CACI, Inc.-Fed. v. U.S. Navy*, 674 F. Supp. 3d 257, 281 (E.D. Va. 2023) (cleaned up) (quoting *Pashby v. Delia*, 709 F. 3d 307, 332 (4th Cir. 2013)). The Court should waive the bond requirement here because Defendants do not risk any significant financial expense complying with the injunction, "the public interest" favors Plaintiffs, and Plaintiffs have a "strong likelihood of success on the merits." *Id*.

# CONCLUSION

For these reasons, this Court should preliminarily enjoin Defendants from enforcing their policy.

Dated: August 10, 2026

Respectfully submitted,

Rachael Tucker Wyrick*
Julius Kairey*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, Virginia 22209
Phone: (703) 243-9423
rachael@consovoymccarthy.com
julius@consovoymccarthy.com

*/s/ Laura Stell*
Laura Stell (NC Bar No. 59840)
Ian D. Prior*
Crystal Clanton*
Rachael Griffin*
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003
Phone: (202) 964-3721
laura.stell@aflegal.org
ian.prior@aflegal.org
crystal.clanton@aflegal.org
rachael.griffin@aflegal.org

*Counsel for Plaintiffs*

*Appearing by special appearance
pursuant to L.R. 83.1(d)

23

# WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d), I hereby certify that the foregoing brief contains 4,960 words, excluding the parts of the brief exempted by the Local Rule.

*/s/ Laura Stell*
Counsel for Plaintiffs

24

# CERTIFICATE OF SERVICE

I certify that on August 10, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. A copy of the foregoing will be sent to Defendants via electronic mail.

*/s/ Laura Stell*
Counsel for Plaintiffs