IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Case No. 1:26-cv-00752

| | | |
|---|---|---|
| **MARY DOE, by and through her mother and next friend, JANE DOE, BETH ROE, by and through her mother and next friend, ALICE ROE, DIANE POE, by and through her mother and next friend CAROL POE,**<br><br>**Plaintiffs,**<br>**v.**<br><br>**CABARRUS COUNTY BOARD OF EDUCATION and DR. JOHN KOPICKI, in his official capacity as Superintendent of Cabarrus County Schools,**<br><br>**Defendants.** | ) | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Defendants Cabarrus County Board of Education and Dr. John Kopicki (collectively "Defendants"), by and through counsel and pursuant to Local Rule 7.3(f), submit this Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction. In support of Defendants' Opposition, Defendants also submit the Affidavits of Dr. Meghan Frazier, Bradley Hinson, and Christopher Myers.

## INTRODUCTION

This case arises from privacy concerns expressed by three students about sharing school restrooms or changing areas with a transgender student. Defendants do not discount those concerns. The question presented by Plaintiffs' Motion, however, is whether those concerns justify immediate relief requiring Cox Mill High School to determine access to every female-designated

restroom, locker room, changing area, shower, and similar facility solely by biological sex. The present record does not support that relief.

Plaintiffs describe encounters from prior school years but have not shown that a similar encounter is likely this year. Cox Mill generally maintains sex-designated restrooms and locker rooms but has no written policy governing transgender students' access. Administrators address those uncommon circumstances individually under district guidance and governing law. Students may use enclosed stalls, private changing areas, and optional single-user or staff restrooms. Neither the principal nor athletic director has received a related complaint this school year.

Plaintiffs also are unlikely to succeed on their legal claims. No Plaintiff has been denied access to a female-designated facility or required to use a different one. Title IX permits separate facilities, but it does not require access based solely on biological sex or give one student a right to exclude another. Nor may Plaintiffs convert an alleged disparate practical effect into intentional discrimination: Title IX's implied private right of action reaches intentional discrimination, not disparate-impact claims. And although the Supreme Court recently addressed sex-separated athletic teams, that decision did not decide restroom access or displace the Fourth Circuit precedent that directly addresses that issue. Furthermore, the relief Plaintiffs request would replace Cox Mill's individualized approach with a categorical access rule that state law precludes the Board from independently adopting and that would extend beyond Plaintiffs' encounters and affect nonparty students. The requested relief is therefore mandatory in substance. It would not preserve the last uncontested status preceding this controversy; it would compel Defendants to create, implement, and enforce a new biological sex-only access rule. Because Plaintiffs seek to alter rather than preserve existing operations, their request warrants the heightened caution applicable to mandatory preliminary injunctions. Because Plaintiffs have not shown a likely violation of law,

an imminent injury during the current school year, or that the equities favor such broad relief, their Motion should be denied.

## QUESTIONS PRESENTED

1. Whether each Plaintiff has standing to seek prospective relief and has shown a likelihood of irreparable harm where the alleged encounters occurred in prior school years and the record does not establish that a similar encounter is likely while this case is pending.

2. Whether Plaintiffs are likely to succeed on their Title IX, federal equal protection, or state constitutional claims where no Plaintiff has been denied access to a female-designated facility and the requested injunction would require the school to impose a biological sex-only access rule that controlling Fourth Circuit precedent does not permit.

3. Whether the balance of equities and public interest favor a mandatory injunction that would change school operations, require administrators to create and enforce a new access rule, and affect the privacy and legal interests of students who are not before the Court.

4. If the Court grants any relief, whether the order must be limited to an imminent injury supported by the record, state precisely what Defendants must do, and require appropriate security.

## RELEVANT FACTS

Cabarrus County Schools has not provided Cox Mill administrators with a written policy governing transgender students' access to restrooms, locker rooms, or changing facilities. Frazier Aff. ¶5; Hinson Aff. ¶9; Myers Aff. ¶5. During the events at issue, school officials understood that *Grimm* governed restroom access in this Circuit. They followed district guidance and applicable law and addressed individual privacy concerns when they were raised. Frazier Aff. ¶¶5, 11, 16, 20, 29-30; Myers Aff. ¶6. The public statement quoted in the Amended Complaint says

much the same thing: the district had no specific policy, dealt with these rare circumstances individually, offered private options, and continued to monitor developments in the law. (Dkt. 15 at ¶¶79-82).

Cox Mill has at least eight female student restrooms and eight male student restrooms throughout the school building. Every female student restroom has individual toilet stalls with doors. Frazier Aff. ¶¶6-7. The building also has at least thirteen staff restrooms, including multiple single-user restrooms, and bathrooms in sex-separated dressing and locker rooms. *Id.* at ¶¶8-10. The athletic area contains two sets of sex-designated locker rooms; one set is reserved for in-season athletes and is not used by physical education students during the school day. *Id.* at ¶8. If it is necessary for a physical education student or student athlete to change clothes during the school day, students may change in an individual toilet stall or shower area rather than an open locker room area. *Id.* at ¶¶8, 27; Hinson Aff. ¶¶5-8. Single-user and staff restrooms are optional privacy alternatives available to any student who needs additional privacy, including for a health condition or another personal need. Frazier Aff. ¶¶11, 29-30; Hinson Aff. ¶18.

The administrators' affidavits do not support Plaintiffs' account of how the school responded to concerns about transgender students' access to facilities. Mr. Hinson does not recall Mary Doe or Beth Roe reporting a concern to him, and he denies telling Mary to take the issue to the principal. Before this litigation, he also had not heard that Diane Poe declined to try out for a team or avoided changing at school because of a transgender student. Hinson Aff. ¶¶10-16. Mr. Myers recalls a brief hallway conversation with Beth about the concern she had raised in her email. He does not recall the alleged office meeting, nor telling Beth that female students would have to go elsewhere, and does not recall Mary reporting a restroom concern. Myers Aff. ¶¶7-16.

Dr. Frazier met with Mary and her mother in June 2026, after Mary made public statements about access to school facilities. She explained how the school would respond if a student raised a concern and told Mary that administrators could work with the student to identify available options. She also encouraged Mary and other students to bring specific concerns directly to her. Frazier Aff. ¶¶14-20. Dr. Frazier did not tell Mary that she had to use a staff restroom. *Id.* at ¶20. Mary also relayed a statement that she attributed to coaches but had heard from two former Cox Mill High School students. Dr. Frazier subsequently interviewed the athletic director and the coaches of the identified team, but none substantiated the statement. *Id.* at ¶21; Hinson Aff. ¶17.

During the June 2026 meeting, Mary identified Beth as a student who allegedly raised a concern in spring 2025. Dr. Frazier contacted Beth and her parents through ParentSquare on July 6, 2026, and followed up by email on July 8. She offered several dates to meet so the current administration could understand what had happened and determine whether any response was needed. Beth and her family did not respond before this lawsuit was filed. Frazier Aff. ¶¶22-25. Neither Beth nor Diane, nor their parents, contacted Dr. Frazier about transgender students' facility access. *Id.* at ¶¶25-26. Since the current school year began, neither Dr. Frazier nor Mr. Hinson has received a report or complaint concerning transgender students' access to school facilities. *Id.* at ¶28; Hinson Aff. ¶19.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy" available only upon a clear showing that the movant is entitled to relief. *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). Each Plaintiff must establish that she "is likely to succeed on the merits . . . likely to suffer irreparable harm [without] preliminary relief, that the balance of equities tips in [her] favor, and that an injunction serves the public interest." *Id.* at 20. All four requirements must be satisfied. Dewhurst v. Century

Aluminum Co., 649 F.3d 287, 290 (4th Cir. 2011). The Court may consider affidavits and weigh the competing record on the Motion. Fed. R. Civ. P. 43(c).

Plaintiffs rely on *Jones v. Board of Governors of the University of North Carolina*, 704 F.2d 713, 715 (4th Cir. 1983), for the superseded proposition that a favorable balance of hardships and "grave or serious questions" may support an injunction. But *Jones* applied the former *Blackwelder* sliding-scale framework, which did not survive *Winter*. The Fourth Circuit now requires each *Winter* factor must be satisfied. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009). Although the Supreme Court vacated the original decision in *The Real Truth About Obama, Inc. v. FEC* on other grounds, the Fourth Circuit expressly reissued the portions articulating the preliminary injunction standard. *Real Truth About Obama, Inc. v. FEC*, 607 F.3d 355, 356 (4th Cir. 2010). Thus, a favorable balance of hardships cannot compensate for deficient showings of likely success and irreparable harm. *Henderson v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018).

Plaintiffs seek affirmative relief that would change existing school operations and require Defendants to create and enforce a biological sex-only access rule. Such mandatory preliminary relief is disfavored and should issue only in extraordinary circumstances. *311 Racing LLC v. NASCAR, LLC*, 139 F.4th 404, 408 (4th Cir. 2025) (quoting *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994)). Any injunction also must state its terms specifically and describe the acts restrained or required in reasonable detail. Fed. R. Civ. P. 65(d)(1). Plaintiffs' characterization of their request as preserving or restoring the "status quo" does not change its mandatory character. For preliminary-injunction purposes, the status quo is the last uncontested status preceding the controversy. *See Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013). Here, that status was not a categorical biological sex-only access rule. Cox Mill's existing approach has been to maintain

generally sex-designated facilities while addressing the uncommon circumstances involving transgender students individually, in accordance with district guidance and governing law. The requested relief is therefore mandatory in substance. It would replace the individualized approach with a categorical rule requiring access based solely on biological sex. The proposed order would require the school to adopt and enforce a new restriction governing transgender students, decide how that restriction would be applied, and instruct employees how to implement it. Because that would alter rather than preserve the parties' relationship, Plaintiffs must justify mandatory relief on a sufficiently clear record. Disputed past encounters and predictions of possible future encounters do not meet that burden. The Court should therefore evaluate Plaintiffs' Motion with the caution the Fourth Circuit requires for mandatory preliminary relief.

## ARGUMENT

### I. Plaintiffs have not clearly established standing to obtain the prospective relief requested.

The record does not show that each Plaintiff faces a real and immediate threat of the injury the proposed injunction is intended to prevent. Standing to seek injunctive relief requires a nonspeculative likelihood that the plaintiff herself will be injured again. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 105-06 (1983); *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018). A chain of possible future events is not enough. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013).

Plaintiffs' declarations describe encounters in prior school years and state that they expect similar encounters in the future. They do not identify a current schedule, physical education assignment, team roster, or other evidence showing that a Plaintiff and a transgender student are likely to use the same facility at the same time during the 2026-2027 school year. The record is particularly thin as to Diane, who did not try out for a team in the 2025-2026 school year. Mary

likewise identifies no current class, activity, schedule, or restroom that is likely to place her in the same facility with a transgender student during the 2026-2027 school year. Beth intends to participate on a team, but there is no evidence that the student she encountered in 2025 will share a changing area with her this year. The school year has now begun, and neither the principal nor the athletic director has received a report or complaint about transgender students' facility access. Frazier Aff. ¶28; Hinson Aff. ¶19. A possible future encounter does not establish the likelihood of injury *Winter* requires. 555 U.S. at 8. Each Plaintiff must show that she personally faces a concrete, nonspeculative injury while this action is pending. Any injunction also must be limited to that injury, rather than extend to every restroom, locker room, shower, changing area, and undefined similar facility at Cox Mill. *See Gill v. Whitford*, 585 U.S. 48, 66 (2018). These same deficiencies bear directly on whether Plaintiffs face irreparable harm.

## II. Plaintiffs are unlikely to succeed on the merits because controlling precedent forecloses the categorical access rule they seek, and the record does not establish discrimination or an actionable Board policy or custom.

### A. *Grimm* remains controlling and forecloses the categorical access rule Plaintiffs seek.

*Grimm v. Gloucester Cty. Sch. Bd.* makes it unlikely that Plaintiffs can establish a federal violation based on Defendants' refusal to impose the exclusion they want. There, the Fourth Circuit held that a school board violated Title IX and equal protection by requiring a transgender boy to use restrooms corresponding to biological sex rather than gender identity. 972 F.3d 586, 618-19 (4th Cir. 2020). In August 2025, the Fourth Circuit again relied on *Grimm* when it granted interim relief allowing a transgender student to use restrooms consistent with gender identity. *Doe v. South Carolina*, No. 25-1787, 2025 U.S. App. LEXIS 20849, at *20–21 (4th Cir. Aug. 15, 2025). That was the controlling law when the events alleged in this case occurred.

The more recent *B.P.J.* decision did not displace *Grimm*. Circuit precedent remains binding after an intervening Supreme Court decision unless the two decisions are irreconcilable. *United States v. Hunt*, 123 F.4th 697, 702 (4th Cir. 2024). *West Virginia v. B.P.J*, 146 S. Ct. 2356 (2026) held that Title IX permits a state to separate athletic teams by biological sex and upheld an athletics eligibility rule; it did not address restrooms. Nor did it hold that schools must exclude transgender students from facilities consistent with their gender identity. *See B.P.J.*, slip op. at 8-14, 29. *B.P.J.* and *Grimm* therefore can be applied in their respective settings, and *Grimm* remains binding unless the Supreme Court or the Fourth Circuit sitting *en banc* holds otherwise. *Hunt*, 123 F.4th at 702.

Plaintiffs conflate two different questions. One is what Congress meant by "sex" in Title IX. The other is whether excluding a transgender student from a particular sex-designated program or facility constitutes discrimination on the basis of sex. *B.P.J.* addressed the first question in deciding whether Title IX permits sex-separated athletic competition. *Grimm* addressed the second in the context of restroom access. It held that a restroom rule excluding a transgender student from the facility consistent with the student's gender identity discriminated on the basis of sex, even though the school characterized the rule as one based on biological sex. 972 F.3d at 618-19. B.P.J.'s discussion of the statutory meaning of sex does not, standing alone, resolve the distinct discrimination question *Grimm* decided. In addition, the context matters. In *B.P.J.*, the Court considered a rule governing eligibility for athletic teams and discussed physiological differences bearing on competition. 146 S. Ct. at 2372-76. Restroom access does not involve athletic eligibility, competitive advantage, or the allocation of places on a team. *Grimm*, in turn, considered and rejected the school board's argument that bodily privacy required a biological sex-only restroom assignment. 972 F.3d at 613-15. Extending *B.P.J.* to restrooms would require a court to

move beyond *B.P.J.*'s holding and revisit an issue *Grimm* already decided. A district court cannot take that step based on an asserted tension in reasoning when the holdings can still be reconciled. *Hunt*, 123 F.4th at 702.

Plaintiffs are not simply asking the Court to recognize that Title IX permits separate facilities; Defendants do not dispute that Section 106.33 permits schools to maintain separate facilities. Plaintiffs ask the Court to require the same biological sex-only restroom rule that *Grimm* held unlawful. Plaintiffs may believe *B.P.J.*'s reasoning should extend beyond athletics, but that is not enough to obtain a preliminary injunction contrary to existing Fourth Circuit law. *Grimm* forecloses the required showing on Plaintiffs' Title IX and federal equal protection theories.

The timing of the challenged conduct provides an additional reason to reject Plaintiffs' theory. During the 2024-2025 and 2025-2026 school years, *Grimm* was controlling Fourth Circuit law, and the Fourth Circuit relied on it again in August 2025. Administrators were not likely violating Title IX or equal protection by declining to adopt a rule that binding precedent held unlawful. Nor should preliminary relief rest on speculation that an appellate court may later extend *B.P.J.* beyond athletics.

### B. Title IX permits schools to maintain separate facilities on the basis of sex, but it neither requires sex-segregated facilities nor gives Plaintiffs a right to exclude another student from facilities they remain free to use.

Title IX prohibits a recipient of federal funds from excluding a person from participation in, denying a person the benefits of, or subjecting a person to discrimination under an education program "on the basis of sex." 20 U.S.C. § 1681(a). A plaintiff must show that she was subjected to discrimination because of sex. *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 236-37 (4th Cir. 2021). Section 106.33 provides that a recipient "*may* provide separate toilet, locker room, and shower facilities on the basis of sex." 34 C.F.R. § 106.33 (emphasis added). The regulation

is permissive. It authorizes a school to maintain separate facilities, but it does not require a school to do so. Nor does it dictate that access to those facilities must be determined solely by biological sex. *See Carcano v. McCrory*, 203 F. Supp. 3d 615, 635-36 (M.D.N.C. 2016).

Cox Mill generally maintains sex-designated restrooms and locker rooms while addressing transgender students' circumstances individually under district guidance and governing law. Title IX does not require Defendants to replace that approach with the categorical biological sex-only rule Plaintiffs seek. Plaintiffs also have not shown that they were excluded from an educational program or denied any benefit available to other students. They remain free to use Cox Mill's female-designated restrooms, locker rooms, and changing areas, and the evidence disputes their claim that school officials required them to leave those facilities. Mr. Myers does not recall telling Mary or Beth that they had to use a staff restroom or go elsewhere. Dr. Frazier likewise did not tell Mary that she was required to use a staff restroom. Myers Aff. ¶¶9, 15; Frazier Aff. ¶20. The presence of another student in a facility that Plaintiffs remain permitted to use does not amount to their exclusion from that facility.

Cox Mill also provides several ways for students to obtain additional privacy without giving up access to the common facilities. Restrooms contain enclosed toilet stalls, and students changing for physical education or athletics may use a toilet stall or shower area within the locker room. Single-user and staff restrooms are available as optional alternatives for any student who needs additional privacy. Frazier Aff. ¶¶6-11, 27, 29-30; Hinson Aff. ¶¶5-8, 18. A student may use those options, but no student is required to do so merely because she is uncomfortable with another student's use of a common facility. Plaintiffs' argument depends on treating the availability of those privacy options as a requirement imposed on female students. The record does not support that characterization. Mary states that she avoided school restrooms when possible. Doe Decl.

¶¶18-19. Beth states that she changed in a restroom rather than the team changing area. Roe Decl. ¶12. Diane states that she chose not to change clothes at school. Poe Decl. ¶16. Those decisions reflect Plaintiffs' stated discomfort, which Defendants do not dismiss. But the record does not show that an administrator barred any Plaintiff from a female-designated facility or ordered her to use a different one. Title IX does not convert a student's decision to avoid a facility into exclusion by the school.

Nor does Title IX give Plaintiffs a right to require the exclusion of another student. Section 106.33 permits schools to provide separate facilities. It does not create a private entitlement for one student to control another student's access to those facilities. Plaintiffs may disagree with how Defendants address access for transgender students, but that disagreement does not show that Plaintiffs themselves were treated differently, denied a benefit, or excluded from participation because of their sex.

Plaintiffs' alternative contention that the district's approach has a disproportionate practical effect on female students fares no better. A disparate effect is not itself proof that Defendants intentionally discriminated against Plaintiffs because of sex. Title IX's implied private right of action extends to intentional discrimination; it does not authorize private enforcement of disparate impact theories. *See Alexander v. Sandoval*, 532 U.S. 275, 280-93 (2001) (holding there is no private right to enforce disparate impact regulations under materially identical Title VI language); *Cannon v. University of Chicago*, 441 U.S. 677, 694-96 (1979) (explaining that Title IX was patterned after Title VI); *see also Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 732 (E.D. Va. 2015) (applying *Alexander* and dismissing with prejudice a disparate impact claim under Title IX). Plaintiffs therefore cannot establish a Title IX violation merely by alleging that the district's otherwise individualized approach currently arises more often in female-

designated facilities. They must show intentional discrimination against them because they are female, and this record does not do so.

The closest analogous decision in the parties' materials reached the same conclusion. In *F.F. v. Valley View Community Unit School District 365U*, the federal court dismissed a female student's Title IX claim because allowing students to use facilities consistent with gender identity did not treat her differently based on sex, and her privacy objection did not establish actionable discrimination. No. 1:25-CV-09112, 2026 U.S. Dist. LEXIS 300899, at *14-21 (N.D. Ill. July 13, 2026). That analysis applies with particular force here, where Plaintiffs remain permitted to use the female-designated facilities and where enclosed stalls, private changing areas, and optional single-user facilities remain available. Plaintiffs' privacy concerns may be sincere, but the record does not establish that Defendants excluded them, treated them differently because of sex, or otherwise violated Title IX.

**C. The federal equal protection claim fails under *Grimm* and on this record.**

The equal protection claim requires proof that similarly situated persons were treated differently and that the difference resulted from intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *see also Wilcox v. Lyons*, 970 F.3d 452, 462-63 (4th Cir. 2020). Plaintiffs have not shown that Defendants treated them differently from similarly situated students. Plaintiffs remain permitted to use the female-designated facilities, and there is no evidence that Defendants denied them an option made available to another student. There is also no evidence that the Board adopted a directive for the purpose of disadvantaging female students. The evidence instead shows that administrators were attempting to follow *Grimm* while responding to individual privacy concerns. Frazier Aff. ¶¶5, 11, 16, 20, 29-30; Myers Aff. ¶6. Plaintiffs' reliance on the alleged practical effect of the district's approach does not establish

discriminatory intent. Equal protection requires proof that Defendants acted "because of," not merely "in spite of," an alleged adverse effect on female students. *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 278–79 (1979). The record shows that administrators followed an individualized approach grounded in their understanding of controlling Fourth Circuit law, not that they selected that approach to disadvantage Plaintiffs because they are female.

Plaintiffs' proposed comparator also does not establish unequal treatment. They compare themselves to a transgender girl permitted to use a female-designated facility and argue that the transgender student receives access unavailable to them. But Plaintiffs have the same access to the female-designated facilities. They also have access to additional private facilities if they want them. There is no evidence that the transgender student may move at will between the male- and female-designated facilities, as Plaintiffs suggest, or that Defendants denied Plaintiffs an option made available to another student. The alleged difference is that Plaintiffs want the female facilities to exclude a transgender student. Equal protection does not supply that exclusionary right, particularly where *Grimm* holds that imposing the requested restriction on the transgender student would itself violate equal protection.

*Peltier v. Charter Day School, Inc.*, does not alter the analysis. The charter school's policy expressly required girls, but not boys, to wear clothing that the court found imposed a distinct burden on female students. 37 F.4th 104, 125-26 (4th Cir. 2022) (en banc). Cox Mill has imposed no comparable sex-specific requirement burden on Plaintiffs. Plaintiffs remain permitted to use the female-designated facilities, and optional private facilities are available to any student who needs additional privacy. Frazier Aff. ¶29. The fact that a particular circumstance may arise more often in one set of facilities does not turn an otherwise uniform approach into intentional discrimination against girls.

Even if the Court assumes that the school's approach is a sex-based classification subject to intermediate scrutiny, Plaintiffs' claim also fails. A sex-based classification is valid if it is substantially related to an important governmental objective. *United States v. Virginia*, 518 U.S. 515, 533 (1996). Defendants had an important reason for their approach: complying with *Grimm* and avoiding the discrimination that decision identified. Their response was tailored to that concern. Students could use facilities consistent with gender identity, while enclosed stalls, private changing areas, and optional alternatives provided privacy without the categorical exclusion rejected in *Grimm*. Frazier Aff. ¶¶6-11, 27, 29-30; Hinson Aff. ¶¶5-8, 18. The cases on which Plaintiffs rely involve the observation or exposure of an unclothed body, which is not alleged here. Plaintiffs do not allege that a transgender student entered an occupied toilet stall, and there is no allegation that a Plaintiff was observed unclothed, saw another student unclothed, or lacked a private place to change. Their alleged injury instead arises from a transgender student's presence elsewhere in a common facility. *Grimm* considered similar privacy objections and held that they did not justify a biological sex-only restroom restriction. 972 F.3d at 607. Framing the same requested exclusion as a competing equal protection right does not avoid *Grimm*.

**D. Plaintiffs have not established a Board policy or custom supporting municipal liability.**

Plaintiffs also must connect the alleged constitutional violation to the Board. A local governmental entity is liable under § 1983 only when an official policy or custom caused the violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978). A policy or custom may arise from a written policy, a final policymaker's decision, an omission reflecting deliberate indifference, or a practice so persistent and widespread that it has the force of law. *Starbuck v. Williamsburg James City County School Board*, 28 F.4th 529, 533 (4th Cir. 2022). A few events

at one school over two school years are not enough to establish a widespread custom. *Carter v. Morris*, 164 F.3d 215, 220 (4th Cir. 1999).

The district did not provide any of the three administrators with a written policy. Frazier Aff. ¶5; Hinson Aff. ¶9; Myers Aff. ¶5. Plaintiffs have not identified a Board vote, resolution, or directive adopting the alleged rule. Their evidence is limited to a few disputed interactions at Cox Mill. Furthermore, the public statement cited in the Amended Complaint describes an individualized approach, not a fixed policy. (Dkt. 15 at ¶¶79-82). Although an unwritten practice can support municipal liability, this record does not show a final policymaker decision or a practice widespread enough to have the force of law. Plaintiffs therefore have not shown a likelihood of establishing municipal liability.

**E. The state constitutional claim is unlikely to succeed.**

The state equal protection claim rises or falls with the federal claim because North Carolina generally applies federal equal protection principles when analyzing Article I, Section 19. *Blankenship v. Bartlett*, 363 N.C. 518, 521 (2009). For the reasons already discussed, the record does not show intentional unequal treatment, discriminatory purpose, or the denial of a recognized right. An optional private restroom does not become unequal treatment because Plaintiffs would prefer that the school require another student to use it.

There is a separate problem with Plaintiffs' contention that the Board should have adopted the access rule they propose. Section 143-761 provides that political subdivisions, including local boards of education, "are preempted from regulation of access to multiple occupancy restrooms, showers, or changing facilities, except in accordance with an act of the General Assembly." N.C. Gen. Stat. § 143-761. Plaintiffs identify no act authorizing the Board to impose a biological sex-only rule. Section 143-761 does not restrict a court's authority to remedy a proven federal

violation, but it does answer Plaintiffs' suggestion that the Board could, and constitutionally had to, adopt their proposed local regulation on its own. *See Town of Emerald Isle v. State*, 320 N.C. 640, 656-57 (1987).

**III. Plaintiffs have not shown likely irreparable harm.**

Plaintiffs have not shown an injury that is both imminent and irreparable. *Winter* requires a likelihood of harm before final judgment, not a possible encounter based on what happened in an earlier school year. 555 U.S. at 22. There is no current schedule, team assignment, or other evidence showing that a particular encounter is likely this year. And since the school year began, neither the principal nor the athletic director has received a report or complaint about transgender students' facility access. Frazier Aff. ¶28; Hinson Aff. ¶19.

Mary's evidence does not establish a likely encounter during the current school year. Her declaration describes restroom encounters in 2025-2026, but does not identify a current class, athletic activity, schedule, or restroom that would place her with the same student this year. Doe Decl. ¶¶10, 17. Mary has not since reported a facility access concern to Dr. Frazier or Mr. Hinson. Frazier Aff. ¶28; Hinson Aff. ¶19.

Beth's allegations are further removed in time. She describes one encounter in a team changing area in April 2025 and states that she intends to participate on the team during the 2026-2027 school year. Roe Decl. ¶¶8, 15. She does not establish that the transgender student remains on that team, will use the same changing area, or will be present when Beth changes. Dr. Frazier twice invited Beth and her parents to discuss what had occurred and whether the current administration needed to respond. They did not reply before suit was filed, and they have not contacted Dr. Frazier about a present concern. Frazier Aff. ¶¶22-25.

Diane likewise relies on circumstances from prior school years. Her declaration states that she did not try out for a team in the 2025-2026 school year and that she encountered a transgender student while enrolled in a physical education course that year. Poe Decl. ¶¶12, 14-17. She provides no evidence that she is enrolled in a comparable course now, plans to try out for a particular team, or otherwise expects to use a particular locker room with the same student. Likewise, neither Diane nor her parents brought a concern to Dr. Frazier before this litigation. Frazier Aff. ¶26. These past events do not establish that Diane faces an imminent injury before the Court can decide the merits.

The physical layout of the facilities further reduces the likelihood of irreparable harm. Every female student restroom has enclosed stalls. The locker rooms have toilet stalls and shower areas where a student may change privately. Single-user and staff restrooms are available to students who want additional privacy, but no student is required to use one merely because she is uncomfortable with another student's use of a common facility. Frazier Aff. ¶¶6-11, 27, 29-30; Hinson Aff. ¶¶5-8, 18. The record does not show that any Plaintiff is likely to be required to expose her body, see another student unclothed, or give up access to a restroom while this case is pending.

Plaintiffs cannot avoid that evidentiary deficiency by invoking *Leaders of a Beautiful Struggle v. Baltimore Police Department*, 2 F.4th 330 (4th Cir. 2021) (en banc). There, the Fourth Circuit concluded that the irreparable harm factor was satisfied only after determining that the plaintiffs were likely to establish an ongoing constitutional violation. *Id.* at 346. The decision does not eliminate *Winter*'s threshold requirement that a movant clearly show a likely violation and likely injury before final judgment. Here, Plaintiffs have not shown that Defendants likely violated equal protection. As explained above, Plaintiffs remain permitted to use the female-

designated facilities; the record does not establish intentional discrimination against them because of sex; and *Grimm* forecloses the categorical restriction they seek. Plaintiffs therefore cannot bootstrap a disputed constitutional claim into an automatic finding of irreparable harm. Without the necessary predicate showing of a likely constitutional violation, *Leaders of a Beautiful Struggle* supplies no presumption and does not excuse Plaintiffs from proving a concrete, imminent injury. Plaintiffs claimed emotional distress likewise does not relieve them of the need to show that the anticipated encounter is likely to occur before final judgment. Their evidence establishes, at most, the possibility of a future encounter. That is insufficient under *Winter*.

## IV. The equities and public interest weigh against the requested injunction.

The balance of equities and the public interest favor leaving the school's current approach in place while the case proceeds. Those factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiffs' injunction would require Defendants to create and enforce a new restriction governing transgender students, decide how that restriction would be applied, and instruct employees how to implement it. It also would affect the privacy and legal interests of students who are not before the Court. That concern is especially significant because the requested relief extends beyond the three Plaintiffs and beyond the facilities involved in their alleged encounters. Beyond those practical concerns, the order would expose Defendants to claims under *Grimm* and displace the individualized privacy measures the school currently offers. That risk further weighs against extraordinary preliminary relief.

Plaintiffs' premise that the equities necessarily favor them because they allege a constitutional violation is circular. That principle applies when the challenged conduct is likely unlawful; it does not allow a movant to bypass the merits by presuming the very constitutional violation the movant must first establish. Because Plaintiffs have not made that threshold showing,

the Court must weigh the actual consequences of the requested injunction, including the operational burdens on Defendants and the privacy and legal interests of nonparty students.

The proposed order also does not satisfy Rule 65(d). An injunction must describe the prohibited or required acts in reasonable detail. Fed. R. Civ. P. 65(d)(1). Plaintiffs would have the Court regulate "other similar intimate facilities", prohibit "distant or inferior facilities", and bar "any other burden not imposed on students generally". (Dkt. 16 at 2). School employees would be left to decide which spaces are sufficiently similar, when a facility is too distant or inferior, and which routine scheduling or supervision decisions amount to a prohibited burden. Those questions would almost certainly return to the Court. The proposed order is unclear in other respects as well. It does not explain how Defendants must determine a student's biological sex, who may make that determination, what information may be requested, or how the restriction should be enforced without disclosing confidential student information. It also does not distinguish between access to a restroom and use of a private stall, or between entering a locker room and changing in an enclosed area. These questions define the conduct the injunction would require, and Rule 65(d) does not permit them to be left for Defendants to resolve at the risk of contempt. Finally, following controlling precedent while the parties develop the record protects the interests of all affected students and avoids prematurely imposing a rule that reaches well beyond the three Plaintiffs. The balance of equities and the public interest therefore weigh against the requested injunction.

## V. Any injunction should require adequate security.

If the Court grants relief, it should require security under Rule 65(c). A preliminary injunction may issue only if the movant gives security in an amount the Court considers proper to cover the costs and damages sustained if the defendant is wrongfully enjoined. Fed. R. Civ. P. 65(c). The Court has discretion in setting the amount. *Pashby v. Delia*, 709 F.3d 307, 331-32

(4th Cir. 2013). Here, compliance could require employee training, communications, monitoring, and changes to existing facility and activity procedures. Those costs are especially likely because the requested injunction would compel Defendants to develop and implement a new categorical rule rather than merely suspend enforcement of an existing written policy. Defendants should be allowed to submit a reasonable estimate of those costs before the Court sets the bond.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' Motion for Preliminary Injunction. If any relief is granted, the order should be limited to an imminent injury supported by the record, state precisely what Defendants must do, protect non-party student information, and require appropriate security under Rule 65(c).

## CERTIFICATE OF WORD COUNT

Pursuant to LR 7.3(d), counsel certifies that the body, headings, and footnotes of this brief contain 6,234 words, as calculated by the word processing software, and that this brief complies with the applicable 6,250-word limit.

Respectfully submitted, this the 11th day of September 2026.

CAMPBELL SHATLEY, PLLC

s/ Ashley F. Leonard
Ashley F. Leonard
NC State Bar No. 56205
674 Merrimon Ave., Suite 210
Asheville, NC 28804
(828) 398.2776
(828) 398.2795 *fax*
ashley@csedlaw.com

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served *Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction* in the above-entitled action upon all parties to this cause via CM/ECF electronic copy or by depositing a copy hereof in a postage paid wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service, properly addressed to the parties as listed:

Rachael Tucker Wyrick
Julius I. Kairey
Consovoy McCarthy PLLC
rachael@consovoymccarthy.com
julius@consovoymccarthy.com

Laura Stell
Ian D. Prior
Crystal Clanton
Rachael Griffin
America First Legal Foundation
laura.stell@aflegal.org
ian.prior@aflegal.org
crystal.clanton@aflegal.org
rachael.griffin@aflegal.org

This the 11th day of September 2026.

s/ Ashley F. Leonard
Ashley F. Leonard